## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DUSTIN JAMES HAWKINS,

        Petitioner,                              Case No. 21-cv-10145

v.                                            Honorable Thomas L. Ludington
                                                        United States District Judge

CONNIE HORTON,

        Respondent.

_____/

## OPINION AND ORDER DISMISSING PETITION FOR HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Dustin James Hawkins, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 through his attorney, Sanford A. Schulman. He challenges his 2017 jury conviction of (1) assault with intent to do great bodily harm, MICH. COMP LAWS § 750.84; (2) carrying a weapon with unlawful intent, MICH. COMP LAWS § 750.226; (3) felon in possession of a firearm, MICH. COMP LAWS § 750.224f; (4) carrying a concealed weapon, MICH. COMP LAWS § 750.227, and (5) possession of a firearm in the commission of a felony, MICH. COMP LAWS § 750.227b.

Petitioner presents six arguments in support of his habeas Petition. He first contends he was denied effective assistance of trial counsel. Second, he argues that the trial court failed to declare a mistrial after a witness repeatedly referred to the petitioner's prior bad acts. Third, he argues that the court erred in admitting hearsay evidence under the excited utterance exception. Fourth, he asserts that the sentencing guidelines were incorrectly scored. Fifth, he argues that he was denied a fair trial because of juror misconduct. And finally, he alleges he was denied a fair

- 1 -

trial because the prosecutor failed to call certain witnesses. For the reasons that follow, Petitioner's

Petition for a Writ of Habeas Corpus will be dismissed with prejudice, a certificate of appealability

will be denied, and Petitioner will be denied leave to appeal in forma pauperis.

## I.

Petitioner Dustin James Hawkins was convicted after a jury trial in which he was jointly

tried with his codefendant Aaron Alan Macauley. The following facts recited by the Michigan

Court of Appeals are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th

Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> These consolidated cases arise from an assault that took place in Detroit on July 22, 2016. The victim, Michael Charles Budish, Jr., testified that he had known Hawkins for 16 years, but had only recently become familiar with Macauley. The victim participated in a marijuana production operation with Hawkins's brother, which resulted in financial and other related tensions dating back to 2015. The victim described a state of "[c]onstant threat" and stated that he left the Detroit area in October 2015 but came back twice, one of those times being on July 22, 2016.

> According to the victim, he had returned to Detroit on July 22 for about 12 hours when, at approximately 3:30 p.m., Hawkins kicked in the front door of his house in Detroit and demanded money. The victim called the police, heard glass breaking, then spotted Macauley sitting in the driver's seat of a vehicle blocking his driveway and pointing a small caliber black handgun at him. The victim further described Hawkins coming "around the house and ... stabbing [his] tires with a screwdriver or a pick or something to flatten, [or] slash [the] tires." Hawkins and Macauley drove away from the victim's house, but the victim encountered them again a few hours later on a street corner where they threatened his girlfriend with a baseball bat. According to the victim, Hawkins and Macauley spotted and pursued him. Hawkins aimed a gun at the victim, fired a shot, then retrieved an aluminum baseball bat from the back seat of the car and hit the victim with it before Hawkins and Macauley drove off again. Soon thereafter, the victim encountered Macauley again, the two exchanged harsh words, Macauley said to his girlfriend, "Baby go get the gun." She retrieved a gun and gave it to Macauley, who then shot the victim in the left arm.

> Hawkins and Macauley were convicted following a joint jury trial. This appeal followed.

*People v. Hawkins*, No. 339087, 2019 WL 3243798, at *1 (Mich. Ct. App. July 18, 2019);

*reconsideration den.* No. 339087 (Mich. Ct. App. Aug. 23, 2019) (ECF No. 13-24, PageID.1759);

*lv. den.* 505 Mich. 1040, 941 N.W.2d 626 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The state and federal constitutions guarantee a criminal defendant the right to the effective assistance of counsel. Mr. Hawkins' trial counsel was ineffective in: (1) waiving or withdrawing the motion for separate juries when mutually exclusive and irreconcilable defenses existed, which foreclosed Hawkins from testifying, (2) failing to investigate and to call at trial certain alibi witnesses and the lead police investigator and (3) failing to relay a plea proposal.

II. The trial court erred in denying a mistrial when improper, prejudicial evidence was disclosed, even after an admonishment.

III. An important element of a fair trial is that only relevant and competent evidence is introduced against the accused. Mr. Hawkins' right to a fair trial was violated with the use of inadmissible hearsay admitted to bolster the testimony of Mr. Budish.

IV. A "leader" under Offense Variable 14 is someone who acted first or gave directions or was otherwise a primary causal or coordinating agent. Mr. Hawkins was not a leader since he was not the person who shot the victim and was not otherwise directing and/or coordinating the event. OV 14 was scored incorrectly and, because the error altered the guidelines range, resentencing is required.

V. Hawkins' Co-Defendant raised different issues from those raised by Hawkins. In the interest of judicial economy and consistency, if Hawkins' co-defendant appeals, and if this Court finds merit in his appeal, we ask the Court to decide that issue in Hawkins' case as well.

ECF No. 8 at PageID.42–43.

## II.

A petition for a writ of habeas corpus brought by a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- 3 -

(2) was based on an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if it either (1)
applies a standard different than what Supreme Court precedent says to apply or (2) applies the
correct precedent to materially indistinguishable facts but reaches a different result. *Williams v.
Taylor*, 529 U.S. 362, 397, 405–06, 413 (2000). But a state decision that applies a state-law
standard is not "contrary to" clearly established Federal law if the state standard is practically
similar to the Supreme Court's. *See Robertson v. Morgan*, No. 20-3254, 2020 WL 8766399, at *4
(6th Cir. Dec. 28, 2020) (holding state decision was not "contrary to" because it applied a state-
law standard bearing "some similarity" to the *Brady* standard).

The Antiterrorism and Effective Death Penalty act of 1996 "imposes a highly deferential
standard for evaluating state-court rulings" and "demands that state-court decisions be given the
benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). If the
state decision was not "contrary to" clearly established Federal law, then it "precludes federal
habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541
U.S. 652, 664 (2004)). In this way, to obtain habeas relief in federal court, a state prisoner must
show that the state court's denial "was so lacking in justification that there was an error well
understood and comprehended in existing law beyond any possibility for fairminded
disagreement." *Id.* at 103. A "readiness to attribute error [to a state court] is inconsistent with the
presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24
(2002). A petition should be denied if it is within the "realm of possibility" that fairminded jurists
could find the state decision to be reasonable. *See Woods v. Etherton,* 587 U.S. 113, 113 (2016)

- 4 -

(per curiam). For claims the state court adjudicated on the merits, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

Each of Petitioner's six claims for habeas relief will be addressed in turn.

### A. Ineffective Assistance of Claim

Petitioner first alleges—as he did at the Michigan Court of Appeals—that he was denied effective assistance of counsel at trial. ECF No. 8 at PageID.53–69.

In order to establish ineffective assistance of trial counsel, a petitioner must show, first, that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must overcome a strong presumption that counsel's behavior was within the wide range of reasonable professional assistance. *Id*. Second, the petitioner must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. *Strickland* places the burden on the petitioner who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Petitioner argues that his trial counsel was ineffective because (1) trial counsel abandoned an earlier motion for separate juries and agreed to a joint trial with his codefendant, which, he argues, prevented him from being able to testify on his own behalf; (2) trial counsel failed to present an alibi defense; and (3) trial counsel failed to present a plea-bargain offer to Petitioner. *See* ECF No. 8 at PageID.53–69. But the Michigan Court of Appeals already rejected all three

arguments on their merits, and its conclusions were reasonable and in-line with state and federal law.

Regarding Petitioner's first argument, the Michigan Court of Appeals concluded Petitioner did not show that he and his codefendant had mutually antagonistic defenses such that his counsel was ineffective for agreeing to a joint trial, and that Petitioner had "placed on the record at trial his decision not to testify." *People v. Hawkins*, 2019 WL 3243798, at *3. Specifically, the Michigan Court of Appeals noted:

> Hawkins's trial counsel requested separate juries for the joint trial, and at a pretrial proceeding the trial court stated its intention to empanel separate juries "based on ... potential conflict of defense." At later pretrial proceedings, however, Hawkins's attorney stated that the request for separate juries was withdrawn because the two defendants were not expected to present conflicting defenses. And during jury selection, Hawkins's trial counsel specified that the possibility of an alibi defense had been abandoned "quite some time ago."
>
> Hawkins argues on appeal that the two defendants depended on "mutually exclusive and irreconcilable defenses," given that "the core of the evidence offered by [Hawkins] was that he was not involved and that it was Macauley who committed the offense and admitted to the same to Hawkins." Hawkins further contends that his trial attorney ill-advisedly dissuaded him from testifying, thus costing him his opportunity to clear himself by implicating Macauley.
>
> At the *Ginther*[1] hearing, Hawkins testified that defense counsel initially wanted separate juries because "me and my father both ... told him that [Macauley] ... [c]alled me on the phone and told me what he had done and ... told my father what he had done," specifying, "He ... told me 'I just shot [the victim], what do I do?'" Hawkins added that he had hoped to testify in his defense, "the big reason" for which was that Macauley was facing two charges apart from what Hawkins faced, and Hawkins was concerned that the jury might confuse the two situations. According to Hawkins, defense counsel "kept trying to talk [him] into having one jury" over his protestations. Hawkins further testified that he had "four alibi witnesses that [would put him] at four different spots during the whole day[;] that [he was] not with [his] co-defendant. So [they] had totally different defenses." Hawkins detailed how, had he testified, he would have placed himself at various locations away from Macauley throughout the day in question.

---

[1] *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973).

As the prosecution points out, the two defendants were charged with various crimes, not over just one incident presenting a question of identity as between them, and Macauley's purported statement to Hawkins only comported with the evidence at trial, where no one suggested that Hawkins, as opposed to Macauley, shot the victim.

Further, Hawkins's trial attorney testified at the *Ginther* hearing that "eventually a decision was made not to have two juries because neither defendant was going to testify," and "it was discussed at length for at least three weeks before trial." Counsel added that his pretrial notes indicated that Hawkins "preferred not to testify," and "[they] agreed that those antagonistic defenses were not going to present themselves."

"Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v. Bonilla-Machado*, 489 Mich. 412, 419, 803 N.W.2d 217 (2011), citing *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d. 987 (1983).

Contrary to his position at the *Ginther* hearing and on appeal, Hawkins placed on the record at trial his decision not to testify. The trial court resolved the conflict at the end of the *Ginther* hearing by declaring Hawkins "incredible," while crediting his defense attorney from long experience as "a fine professional" whom the court had never known to lie. Unsuccessful criminal defendants not uncommonly allege that counsel's advice on whether to testify rendered counsel's assistance ineffective. See, e.g., *People v. Tommolino*, 187 Mich. App. 14, 15, 466 N.W.2d 315 (1991). But to make issue of that decision on appeal is simply to ask for the chance to try an alternate strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v. Barnett*, 163 Mich. App. 331, 338, 414 N.W.2d 378 (1987); see also *People v. LaVearn*, 448 Mich. 207, 216, 528 N.W.2d 721 (1995).

Hawkins asserts that it is "unclear ... what, if any, strategic advantage was the use of one jury," but joint trials of codefendants are the norm, with bifurcation of proceedings taking place only where there is good reason to depart from that norm. The question, then, is not whether there was a strategic advantage in having one jury, but rather whether defense counsel failed to pursue some strategic advantage in having separate juries. Hawkins offers no such theory apart from second-guessing the decision that he made not to testify.

For these reasons, Hawkins fails to show that agreeing to proceed with the joint trial before a single jury constituted deficient performance on the part of his trial attorney.

*People v. Hawkins*, 2019 WL 3243798, at *2–3 (internal footnote omitted).

A criminal defendant is not entitled to a separate trial merely because he might have had a better chance for acquittal in a separate trial, *Zafiro v. United States*, 506 U.S. 534, 540 (1993), nor does a criminal defendant have a right to a separate trial merely because the defendant and the co-defendant present antagonistic defenses. *Stanford v. Parker,* 266 F.3d 442, 458 (6th Cir. 2001). The Michigan Court of Appeals' analysis was legally and factually sound. It applied the correct constitutional test, relied on facts supported in the record, and did reasonably applied clearly established constitutional law. Thus, counsel was not ineffective for agreeing to a joint trial, and habeas relief will be denied on this ground. *See Lang v. Gundy,* 399 F. App'x 969, 975-76, 978 (6th Cir. 2010).

Petitioner's additionally argues the joint trial prevented him from testifying in his own defense. *See* ECF No. 8 at PageID.55–62. A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (internal citation omitted). To overcome this presumption, a habeas petitioner must present record evidence that he somehow alerted the trial court to his desire to testify. *Id.* There is no such evidence here, as the Michigan Court of Appeals correctly concluded. *See People v. Hawkins*, 2019 WL 3243798, at *2–3. Moreover, Petitioner did now show that he was prejudiced by counsel's advice concerning whether he should testify or not "because he does not show how his testimony would have altered the outcome of his case." *Hodge,* 579 F.3d at 639.

Petitioner next argues his counsel was ineffective for failing to present an alibi defense. *See* ECF No. 8 at PageID.62–68. But the Michigan Court of Appeals rejected this argument, too:

At the *Ginther* hearing, Hawkins's defense attorney testified that "early on when [he] met with [Hawkins] there was an alibi discussed," but that such an approach proved problematic, explaining:

> It's my understanding that Dustin Hawkins thought originally that he and Amanda Chaney and somebody ... that he might have met before the movies were at a movie theater Downriver I thought on the day of the incident .... And as that developed I asked him to try to go to the theater and ask Amanda Chaney, specifically she volunteered to go to the theater and try to obtain the video. And Dustin was out, too. To try to go get video or come up with ticket stubs to show that they were at the theater at that time. Late in the case shortly before trial, and a lot of evidence came in very late in this case. It was very disappointing. So there were a lot of curve balls so to speak at the end. Late in the case we got ... records that showed ... Dustin Hawkins' cell phone in the vicinity or in the neighborhood and not at a Downriver theater at that time. So it would have been embarrassing and damaging to the defense to present such an alibi when, in fact, his phone was nowhere near a theater Downriver.

In light of defense counsel's explanations of why the alibi defense was considered, then abandoned, Hawkins's contention is simply a request to this Court to assess defense counsel's performance with the benefit of hindsight. But "[t]hat in hindsight a strategy was not completely successful does not render it unreasonable and does not render counsel's assistance ineffective."

Hawkins states that he identified six alibi witnesses and names five as having provided affidavits asserting that defense counsel never made inquiry of them. However, "the failure to interview witnesses does not itself establish inadequate preparation." Further, no such affidavits were offered into evidence at the *Ginther* hearing, and Hawkins does not specify the ostensibly exculpatory accounts that any of those witnesses would have offered. However, at the *Ginther* hearing, defense counsel mentioned some of them in the course of explaining that attempting to establish that the car implicated in the incident in question was parked in one place all day proved unavailing "because it would have looked like nobody could place it there for ... a full day," but also because "it would be like ... his buddy[ ] was hiding the ... car," and thus that "we finally concluded that, that testimony would have been more damaging than helpful." Hawkins offers no explanations of what defense counsel might have gained from further pursuing his supposed alibi witnesses to counter the reasons counsel provided at the *Ginther* hearing for concluding that Hawkins's attempt to establish an alibi would more likely backfire than succeed.

*People v. Hawkins*, 2019 WL 3243798, at *4 (internal citations omitted).

The Michigan Court of Appeals' rejection of the Petitioner's alibi-defense argument for establishing ineffective assistance of counsel was reasonable, precluding habeas relief. Petitioner was positively identified as one of the perpetrators by the victim, who had known Petitioner for 16 years. Several other witnesses who knew Petitioner identified him as being involved in the crime. Petitioner's cellphone records placed him near the crime scene. Thus, it was reasonable for the Michigan Court of Appeals to conclude that trial counsel was not ineffective for failing to present an alibi defense.

Finally, Petitioner claims that trial counsel was ineffective for not communicating a plea-bargain offer to him. ECF No. 8 at PageID.68–69. But, again, the Michigan Court of Appeals already rejected this claim:

> At the *Ginther* hearing, Hawkins testified that he declined an offer involving "five, plus two," but that "a couple of weeks before trial" there was talk of "something about a ... two plus two," which the prosecutor made known was "not official," and which defense counsel "told me basically that we're not taking that." Hawkins argues that defense counsel should have given him a better opportunity to consider taking the latter offer, but the prosecution points out that the record includes no indication that any such proposal was offered, and Hawkins's own admission that the prosecutor disclaimed there being anything official behind talk of a plea bargain putting the sentence at "two plus two" fairly quells any concern that such a plea proposal came about that entirely escaped record notice.
>
> Because the record does not substantiate that any actual plea bargain was offered that defense counsel allegedly failed to communicate to Hawkins, his claim of ineffective assistance of counsel fails.

*Id.*.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler v. Cooper,* 566 U.S. 156, 163 (2012); *Missouri v. Frye,* 566 U.S. 134, 143-44 (2012).  In order to prevail on an ineffective-assistance-of-counsel claim based on a petitioner's rejection of a plea offer, the petitioner must show that he would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances. *Missouri v. Frye,* 566 U.S. 134, 151

(2012) The defendant must also show that the court would have accepted its terms, and that the conviction or sentence, or both, would have been less severe than under the judgment and sentence that in fact were imposed. *Lafler v. Cooper,* 566 U.S. 156, 164 (2012).

Here, like the Michigan Court of Appeals concluded, Petitioner is not entitled to relief on this claim because he did not present clear and convincing evidence that the prosecutor ever offered a plea bargain of two years for the felony-firearm charge and a two-year minimum sentence on the remaining charges. Accordingly, Petitioner has not established that trial counsel was ineffective for failing to properly advise Petitioner regarding a nonexistent plea offer, so he is not entitled to habeas relief on this claim. *See e.g.*, *Guerrero v. U.S.*, 383 F.3d 409, 419 (6th Cir. 2004).

## B. Evidentiary Claims

In his second and third claims for habeas relief, Petitioner alleges evidentiary errors. *See* ECF No. 8 at PageID.69–77. In his second claim, he alleges he was prejudiced by the admission of prior bad acts evidence and that the trial judge should have accordingly declared a mistrial. *Id.* at PageID.69–73. In his third claim, Petitioner argues that the judge improperly admitted hearsay evidence under the excited-utterance exception. *Id.* at PageID.73–77.

But, importantly, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the *United States*. *Id.* (emphasis added). Thus, errors in the application of state law, especially state evidentiary rules, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

**1.**

- 11 -

Petitioner's first evidentiary claim for habeas relief—that he was prejudiced by the victim's testimony that the Petitioner and codefendant had previously assaulted him with a baseball bat—is two-tiered. First, he argues that the victim's testimony violated the Michigan Rules of Evidence. *See* M.R.E. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Second, he argues that the trial judge should have declared a mistrial after the victim repeatedly referred to this assault.

Petitioner's first argument—that the victim's testimony violated the Michigan Rules of Evidence—is not cognizable on habeas review. *See Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (holding that federal habeas review did not permit a federal court to reverse a state court conviction based on trial judge's ruling under state evidentiary law).

Turning to Petitioner's second argument, the Michigan Court of appeals rejected the argument that the trial court should have declared a mistrial after the victim's repeated testimony:

> When the victim was asked if a certain acquaintance of defendants joined the latter in trying to collect money from him, the victim answered, "Only the time that they broke in and tried to assault me with a baseball bat that I never reported." This initial mention of the earlier incident passed with no further ado.
>
> When the prosecutor asked the victim why he left town in late October 2015, the witness answered, "Because they broke into my house and beat me with a baseball bat," then specified both defendants, among others. The prosecutor began asking further about "the first breaking in of your house in October" when Macauley's attorney objected that "[h]e didn't say when it was," and Hawkins's attorney raised an objection under MRE 404(b). The prosecutor elected to move onto other questioning, and the trial court agreed to "strike those questions and answers" and instructed the jury to disregard them. Counsel for Macauley later moved for a mistrial after the jury was excused for lunch. The trial court denied the motion on the ground that it had provided a "sufficient remedy."
>
> After lunch, Hawkins's attorney elicited that the victim did not know Macauley before the subject shooting, then asked if he had ever had any disagreements with Macauley, to which the victim answered, "Except for when he came in my house and tried to beat me with a baseball bat." Counsel reminded the victim that such

- 12 -

testimony had been stricken, and the trial court stated, "We're going to strike that again," and again instructed the jury to disregard it.

Later in the cross-examination, the victim recounted where, during the incident in question, after Macauley shot at him, Hawkins "grabs a bat from the back seat," and continued, "He left the door open and came running at me and I was running from him because he has already hit me with a bat before." The trial court held a bench conference and excused the jury, then asked about the proper remedy in light of the additional improper testimony. The prosecutor suggested that the court "clearly instruct" the witness not to refer again to that "previous incident." Counsel for Macauley objected and again requested a mistrial. The trial court again denied the motion, but agreed to follow Hawkins's counsel's suggestion not to mention the matter to the jury again, but to instruct the witness not to speak of the earlier assault with a bat. The court then admonished the victim, "You are not ever, ever, ever to again mention on the witness stand this incident that took place ... with regard to a baseball bat beating you approximately a year before this incident." The victim completed his testimony with no further such references.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich. App. at 228, 530 N.W.2d 497. However, not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Id.* "As a general rule, unresponsive testimony by a prosecution witness does not justify a mistrial unless the prosecutor knew in advance that the witness would give the unresponsive testimony or the prosecutor conspired with or encouraged the witness to give that testimony." *People v. Hackney*, 183 Mich. App. 516, 531, 455 N.W.2d 358 (1990). In this case, Macauley asserts that the prosecutor "sought" or "elicited" the problematic testimony, but neither explains why the record compels imputing such mischief to the prosecutor where there was no such suggestion at trial. We are satisfied that all indications in the record are that the prosecutor was readily dissuaded from the start from trying to make capital of the earlier alleged assault with a baseball bat.

As noted, the trial court initially instructed the jury to disregard the offending testimony, but refrained from reiterating the instruction when the error was repeated in deference to Hawkins's attorney with the acquiescence of Macauley's attorney. "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v. Petri,* 279 Mich. App. 407, 414, 760 N.W.2d 882 (2008). Hawkins emphasizes that the jury repeatedly heard about the alleged earlier assault with a bat, but as the trial court's curative instruction indicated, the jury was expected to *disregard* the offending testimony, not forget it entirely. Accordingly, if all those reminders made it all the harder for the jurors to put the matter out their minds, the jurors should nonetheless have retained the admonishment not to let it affect their deliberations. A criminal defendant is entitled to a fair trial, not

necessarily a perfect one. *People v. Mosko*, 441 Mich. 496, 503, 495 N.W.2d 534 (1992).

*People v. Hawkins*, 2019 WL 3243798, at *7–8 (emphasis original).

A trial court has the discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity. *Walls v. Konteh,* 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).

Importantly, in the present case, the trial court struck the victim's testimony about the prior assault and instructed the jury to disregard the victim's testimony about it. *See* ECF No. 13-16 at PageID.823 ("I'll strike those questions and answers . . . You're to disregard those, okay."). And, when charging the jury with final instructions, the trial court judge instructed the jury not to consider anything that had been stricken from the record or had not been admitted into evidence. ECF No. 13-19 at PageID.1567. This Court assumes, in the absence of evidence to the contrary, that the jury followed the curative instruction not to consider the struck testimony. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"). And Petitioner provides no reason to believe otherwise. *See generally* ECF No. 8. Accordingly, the Michigan Court of Appeals reasonably determined that the victim's testimony did not render Petitioner's trial fundamentally unfair. Thus, the trial court's denial of Petitioner's motion for a mistrial is not a cognizable basis for federal habeas relief.

**2.**

In his second evidentiary claim, Petitioner alleges that the trial court erred in admitting the victim's out-of-court statements to the police, which were recorded by a police officer's body microphone, because the statements were inadmissible hearsay. *See* ECF No. 8 at PageID.73–77.

Specifically, Petitioner alleges that the trial judge erred in admitting the statements under the excited utterance exception to the hearsay rule.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (finding petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle petitioner to relief.

Moreover, the Michigan Court of Appeals determined that the victim's out-of-court statements were admissible under the excited utterances exceptions to the hearsay rule. *People v. Hawkins*, 2019 WL 3243798, at *5–6. In sum, Petitioner's claim that the trial court improperly admitted the victim's statements to the police under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review. *See, e.g.*, *Smith v. Jones,* 326 F. App'x 324, 330 (6th Cir. 2009).

### C. Sentencing Guidelines Claim

Petitioner's fourth argument for habeas relief is that the trial judge improperly assessed points against him under Offense Variable 14 of the Michigan Sentencing Guidelines. *See* ECF No. 8 at PageID.77–79.

But Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003); *McPhail v. Renico,* 412

F. Supp. 2d 647, 656 (E.D. Mich. 2006). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer, 826* F.3d 898, 904 (6th Cir. June 23, 2016). "[I]n short, [P]etitioner ha[s] no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score under the Michigan guidelines does not merit habeas relief. *Id.*

### D. Unexhausted Claims

In his fifth and six arguments for habeas relief, Petitioner asserts there was juror misconduct and that the prosecutor failed to produce certain witnesses for trial. *See* ECF No. 8 at PageID.79–81. But Petitioner did not raise these claims at the Michigan Court of Appeals, although his codefendant, in a separate appeal, raised these claims on his own behalf. Respondent argues that these claims have not been exhausted because *Petitioner* did not raise these claims on his own behalf before the state court of appeals. ECF No. 12 at PageID.173–79.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c). *See Picard v. Connor*, 404 U. S. 270, 275–78 (1971).

Although Petitioner's *codefendant* raised these two claims in his own appeal brief, *Petitioner* did not, so his claims are not exhausted. *See Aldrich v. Bock*, 327 F. Supp. 2d 743, 748, n. 1 (E.D. Mich. 2004) ("There is no authority to support [the] claim that [a codefendant's] appeal of certain issues should be ascribed to Petitioner for exhaustion purposes."). Indeed, the issues raised by Petitioner in these claims involve constitutional rights which are personal to *him*, so an appeal by a codefendant could not exhaust Petitioner's claims. *See Williams v. Nelson,* 431 F.2d 932, 933 (9th Cir. 1970) (noting that questions raised by state prisoner, petitioning for habeas

corpus, involved constitutional privileges which were personal to *him*, and his codefendant's appeal raising those issues could not exhaust the petitioner's remedies in the state courts).

To the extent Petitioner attempted to raise these claims in his application for leave to appeal to the Michigan Supreme Court, that attempt is also insufficient to exhaust these claims as required for habeas review. Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). In sum, Petitioner did not present a juror misconduct or a missing witness claim on his direct appeal with the Michigan Court of Appeals, so his subsequent presentation of these claims to the Michigan Supreme Court does not satisfy the exhaustion requirement for habeas purposes. *See Skinner v. McLemore,* 425 F. App'x 491, 494 (6th Cir. 2011); *Farley v. Lafler,* 193 F. App'x 543, 549 (6th Cir. 2006).

But a habeas petitioner's failure to exhaust his state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c). Because the remaining claims are waived or non-cognizable, in the interests of efficiency and justice, both claims will be addressed on the merits, rather than dismissed on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

### 1. Juror Misconduct

Petitioner first argues that he was denied a fair trial because the jurors discussed part of the case before deliberations. ECF No. 8 at PageID.80–81. The Michigan Court of Appeals found that this claim was waived because defense counsel agreed with the trial court's remedy to the alleged misconduct:

After the jury was empaneled, and instructed not to discuss the case before deliberations, one juror came forward and admitted that "there was some I would say discussion about what we've seen so far here," and explained as follows:

> We talked about breaking and entering and home invasion, some of the things that you had said and some of the opinions or I should say, some of the interpretations of what that mean. We talked about how people had been wrongfully committed. One ... lady and I couldn't pick her out if she was standing here right in front of me now said something about somebody that had been in prison for twenty-eight years and ... then was released because he had been wrongfully convicted. We talked about the tattoos that both defendants have. They ... were noticed and they were discussed. That discussion was I think probably very relevant, but only maybe twenty seconds or so.

The court asked for elaboration, and the juror stated, "Just how they both have tattoos on their neck. And ... there was hey, did you see, can you tell what that is kind of thing," but also that "there was the mention of a brotherhood type thing" and "everybody was involved in the discussion." Defense counsel declined the invitation to ask any further questions, and the court reiterated to the jury that there was to be no discussion about the case at present. The court then asked, "Can everybody still give both sides or give all sides a fair trial in this matter?" and "Can everybody give a fair trial?," with the jury answering both questions with a collective "Yes." The trial court then asked, "Is there anybody that cannot give a fair trial after those discussions? Anybody? The court then asked if counsel was satisfied to proceed with trial. All three advocates expressed satisfaction.

In denying Macauley's motion for a new trial, the trial court explained why it did not regard this irregularity as warranting a new trial:

> I'll start with the issue ... whether or not defendant was entitled to a new trial due to the actions taken by the jurors prior to being sworn in and whether or not that should have resulted in a mistrial.
>
> I don't think anybody at all has ever brought up there was ineffective assistance of counsel ..., and so I am not going to address it .... But in this case after we heard about this from the jury ... I brought the panel back in and told them not to discuss anything about the case and then I asked them whether they could still give ... all sides a fair trial in this matter. They all answered affirmatively....
>
> Then I asked, "Is there anybody that cannot give a fair trial after these discussions, anybody? Alright. Is counsel satisfied with what I have instructed the jury and that we can proceed with the trial?'

[The prosecuting attorney], "Yes, Judge." [Hawkins's attorney], Yes Your Honor." The Court, "Anything additional you want me to say or add?" [The prosecuting attorney], "No, I don't believe so." The Court, "Counsel, are you satisfied?' [Macauley's attorney] said "No, Your Honor."

 Based on that I think ... that took care of the issue.

* * *

... I don't think the interest of justice or preventing a miscarriage of justice would require the Court to order a new trial with regard to that issue.

We hold that defense counsel's participation in the discussion on how to deal with that irregularity, and unequivocal acceptance of the remedy provided, constituted an affirmative waiver, thus extinguishing appellate objections. *People v. Carter*, 462 Mich. 206, 215-216, 612 N.W.2d 144 (2000); see also *People v. Roberson*, 167 Mich. App. 501, 517, 423 N.W.2d 245 (1988) ("Defendant should not be allowed to assign error on appeal to something which his own counsel deemed proper at trial. To do so would allow defendant to harbor error as an appellate parachute.").

*People v. Hawkins*, 2019 WL 3243798, at *9.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34; *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("[W]aiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors"). "When one knowingly waives his charged error, that challenge is forever foreclosed, and cannot be resurrected on appeal." *Morgan v. Lafler*, 452 F. App'x 637, 646, n. 3 (6th Cir. 2011) (citing *United States v. Saucedo*, 226 F.3d 782, 787 (6th Cir. 2000)).

The Michigan Court of Appeals concluded that Petitioner waived the juror misconduct claim because defense counsel agreed to proceed with the impaneled jury after the jurors indicated that they could render a fair and impartial verdict and would not again discuss the case until they began deliberations. Petitioner is not entitled to relief on his juror misconduct claim.

## 2. Prosecution's Witnesses

Petitioner also briefly claims that the prosecutor failed to call certain witnesses to testify. ECF No. 8 at PageID.81.

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him. *See* U.S. CONST. amend. XI. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F. Supp. 2d 818, 825 (E.D. Mich. 2009). The right to confrontation does not impose a duty upon the prosecution to call a particular witness. *United States v. Bryant,* 461 F.2d 912, 916 (6th Cir. 1972); *Turnbough v. Wyrick,* 420 F. Supp. 588, 592 (E.D. Mo. 1976). Stated differently, the Sixth Amendment Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California,* 386 U.S. 58, 62, n. 2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F.2d 1, 9 (1st Cir. 1985) (internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 F. App'x 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any

particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, *2 (6th Cir. Aug. 24, 1988) (citing *United States v. Bryant*, 461 F.2d at 916). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier*, 419 F. App'x at 559. Petitioner presented no evidence that these witnesses would have offered exculpatory evidence had they testified; he is not entitled to habeas relief.[2]

In sum, none of Petitioner's six claims warrant habeas relief, so his Petition, ECF No. 1, will be dismissed with prejudice.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a certificate of appealability will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a) (3).

---

[2] Petitioner also briefly argues that the trial court erred by not providing a jury instruction about a missing witness. But a criminal defendant does not have a clearly established federal right to a missing witness instruction. *See Stadler v. Curtin,* 682 F. Supp. 2d 807, 821–22 (E.D. Mich. 2010). Thus, Petitioner may not obtain federal habeas relief based on the state court's failure to give an instruction to his jury regarding the prosecution's failure to produce these witnesses.

**V.**

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED**.

**This is a final order and closes the above-captioned case.**

Dated: March 8, 2024                    s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge